UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY M. COUGHLIN,

    Petitioner,

v.                                                         Case No. 8:07-cv-124-T-23TBM

SECRETARY, Department of Corrections,

    Respondent.
                                               /

## O R D E R

      Coughlin petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for attempted murder in the first degree, attempted felony murder, armed robbery, and felony fleeing a law enforcement officer, for which convictions Coughlin serves life imprisonment. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 16) The respondent contests both the petition's timeliness (Response at 9-11 Doc. 16) and the merits of the grounds for relief. Although timely, the petition lacks merit.

### TIMELINESS

      Following affirmance on appeal, Coughlin challenged his convictions and sentences in a Rule 3.850 motion to vacate, a Rule 3.800 motion to correct an illegal sentence, and a state petition for the writ of habeas corpus. The respondent argues that the last challenge was improperly filed and, as a consequence, failed to toll the federal

one-year limitation. The respondent recognizes that if the last challenge was properly filed and tolled the limitation, the federal petition is timely.

In state court Coughlin petitioned for the writ of habeas corpus (Respondent's Exhibit 27), which the circuit court summarily denied on the merits. (Respondent's Exhibit 28) On appeal the respondent opposed the petition arguing (1) for dismissal of the petition as second or successive to the Rule 3.850 motion to vacate and (2) for affirmance of the circuit court's ruling that the record refutes the only claim asserted in the petition. Instead of dismissing the appeal on procedural grounds, the appellate court affirmed without a written opinion. Because no state court applied a procedural bar, the respondent's timeliness argument is rejected. Coughlin's petition is timely.

## **FACTS**

Coughlin slashed the throat of an employee at a local drug store and stole both a box of syringes and the cash register drawer from the pharmacy department. The following summary of the facts is from the respondent's brief on direct appeal. (Respondent's Exhibit 4 at 1-2) (citations to record omitted)

> At the sentencing hearing held on June 14, 2001, before Judge Federico, the sixty-five year old victim, Chuck Roe, testified before the court about the heinous crime perpetrated against him. From behind, Appellant used a knife to slice open Mr. Roe's throat, narrowly missing his jugular vein. Appellant then proceeded to slash Mr. Roe's face two more times with his knife. Mr. Roe tried to resist, but the first initial slash across the throat was too painful to overcome. Mr. Roe was taking Coumadin, a medication used as a blood thinner, which made it easier for him to bleed to death. Mr. Roe now must permanently wear a beard because of the embarrassment he feels over his numerous scars. Mr. Roe was especially concerned of the effects his scars would have on his grandchildren. His family continues to suffer.
>
> Nancy Roe, the victim's wife for over 44 years, described the scene at Bayfront Hospital, where her husband was taken after the attack, "Have

- 2 -

you ever smelled the odor of burning flesh, Judge?  That's the odor I smelled at Bayfront when I got there.  Chunks of blood covered my husband's whole upper body."  In the six weeks after the attack, Mrs. Roe called 911 five times, because Mr. Roe would continually vomit, and the trauma he suffered led to the complete failure of his thyroid, kidneys, and adrenal glands.  Before the accident, Mr. Roe only took two pills a day, now he takes seventeen pills a day.

Mr. Lake was the pharmacist working when Appellant attacked Mr. Roe and robbed the pharmacy.  Immediately after Appellant's attack, Mr. Lake went to Mr. Roe's aid.  Mr. Lake described the injuries on Mr. Roe's person, "I saw Chuck bleeding profusely.  I could actually see his jaw.  I had to flap up his skin on to his face and his jugular was bleeding.  I couldn't stop it."

Coughlin pleaded <u>nolo condere</u> without a plea agreement.  He understood that he faced life imprisonment, but he hoped to receive a reduced sentence by testifying for the state in two, unrelated murder trials.  Coughlin testified in the other cases before his sentencing.  At sentencing the judge acknowledged Coughlin's assistance to the state but sentenced him to life imprisonment because of both the viciousness of this offense and Coughlin's violent past.[1]

---

[1] The sentencing judge prefaced the imposition of sentence with the following:

> I'm struck by two things in the case.  I'm struck by the senseless viciousness of this crime itself.  This crime itself is callous and violent to an almost unbelievable degree.  And then when I read the PSI and I'm familiar with what's gone on before, I'm just struck at how irresponsibly and how wrongly and how much Mr. Coughlin has been allowed to get away with over the last years [and] that he first was in the Virginia criminal justice system and then our criminal justice system.  It's absolutely inexcusable.
>
> In 1989, he got a ten-year sentence with five suspended in Virginia.  I don't know how much of that time he served, but he was back in Pinellas County and arrested in '93.  And given the facts that the State detailed, it's inconceivable to me that a judge in those circumstances would give him nine years in prison and suspend seven of those years and put him on house arrest for the aggravated battery crime that the State detailed as far as the cabbie is concerned and another attempted robbery, but somehow that was done.

(continued...)

---

[1](...continued)
> What's even more inconceivable is that in '96 when he committed the battery on a law enforcement officer or resisting with violence in that circumstance that given his history and given the violence he had, that and given the fact that he committed new violent felonies when he was on supervision that another judge would put him on supervision with another suspended sentence. I just don't understand it and I can't understand it. Just on and on more and more violent crimes and different judges in the same division just keep putting people back on supervision when he continues to injure and hurt and prey upon people in the community. It's just unbelievable.
>
> And I read the VOP reports in this case. Even besides the new felonies, there's other violations of probation, continued to use cocaine, didn't listen to what his probation officer said, didn't meet the terms and conditions of probation repeatedly over and over again.
>
> And I guess that the judges that were sitting here could say – well, I don't know what they would say in this circumstance because in the VOP report that I looked at, the probation officers on repeated occasions said, "This person is dangerous; he represents a danger to the community and he needs to be taken off the street." I'm quoting from one.
>
> On the last violation report 6/24 of '96, this officer recommended in court that his probation be revoked and he be sentenced to seven years in prison due to him representing a serious danger to society, due to him violating his probation by committing a very serious and violent offense and he was already on probation for a very violent offense. He once again stands accused of yet another violent offense. That predates all of what we're talking about now. I don't understand it. I don't know how different judges could sit here with this history and continue to let this person out in the community, but they did, and with predictable results.
>
> All I can say – there are two responsible parties to this circumstance Mr. Coughlin, who did this to Mr. Roe, and the folks that preceded me in this position that didn't take their responsibility serious enough to protect people in the community and allowed this to happen so Mr. Roe would be victimized in the way that he has.
>
> All I can say, Mr. Roe, is I'm sorry because you were failed not only by what Mr. Coughlin did, but what happened previously in the criminal justice system. This should never have been allowed to happen. Mr. Coughlin should never have been on the street and in a position to have this happen to you.
>
> And for everyone that went before me that handled this case, that mishandled this case, I apologize to you that you're in a position that you had to suffer what you did. But no one else will be in this position ever in the future as far as Mr. Coughlin is concerned.

(continued...)

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas

---

[1](...continued)
> I do find that he qualifies as a violent career criminal based on the convictions that we've discussed. He's been given notice that he is qualified to be sentenced as a violent career criminal.
>
> I can think of no case in my 18 years in the criminal justice system, not just as a judge and involved in the criminal justice system, that deserves a sentence more than this case does. That he testified, fine. That he tried to help out another case, fine. But he cannot undue the damage that he's done to Mr. Roe and to the other people that have been victimized by him in the past.
>
> I can't allow there to be a possibility of any victims in this community or any other community in the future.

- 5 -

corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002). See Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

In per curiam decisions without a written opinion, the state appellate court affirmed (1) Coughlin's convictions and sentences on the direct appeal, (2) the denial of his Rule 3.850 motion to vacate, and (3) the state petition for the writ of habeas corpus. (Respondent's Exhibits 5, 18, and 32, respectively)[2] The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary

---

[2] The denial of relief on Coughlin's Rule 3.800 motion to correct illegal sentence was affirmed at Coughlin v. State, 932 So.2d 1224 (Fla. 2d DCA 2006) (en banc).

- 6 -

nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Coughlin bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Consequently, this court must defer to the findings of fact in the state court's rejection of Coughlin's post-conviction claims. (Respondent's Exhibits 9, 15, 21, and 28)

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Coughlin claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Coughlin must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Coughlin must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Coughlin cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Coughlin asserts three grounds of ineffective assistance of counsel and three grounds directly challenging his plea and sentence.  To prevail, Coughlin must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Grounds One and Three:

Coughlin complains that his plea was involuntary (ground one) and counsel rendered ineffective assistance (ground three) because Coughlin believed he would receive a sentence of ten years, not life imprisonment. The state post-conviction court summarily rejected the ineffective assistance claim as follows (Respondent's Exhibit 9 at 67-69) (citations to the record omitted):

> The Defendant alleges that he believed that he would receive a ten-year sentence as a result of his substantial assistance to law enforcement. A defendant's guilty plea is considered involuntary if it is induced by a defense counsel's promise which is not kept, and a defendant may withdraw his plea if he was misled and induced to plead by his counsel's mistaken advice. Ricardo v. State, 647 So.2d 287, 288 (Fla. 2d DCA 1994). The Defendant relies on Ricardo and federal cases from the 8th Circuit to support his argument. However, the analysis in State v. Leroux, 689 So.2d 235 (Fla. 1996) (a defendant who is informed by the court during the plea colloquy that he may have to serve every day of a ten-year sentence could hardly reasonably rely on counsel's advice to the contrary) is more illustrative of the scenario in the case at hand.
>
> The Defendant's change of plea hearing took place on November 27, 2000, several months prior to his sentencing. At that time, trial counsel discussed the status of the case with the Court: "Judge, I have told Mr. Coughlin that a life sentence for the attempted murder, a life sentence for the robbery, is certainly mandated by the habitual violent felony status, that the Court has some discretion in those matters, and we'll have sentencing in February where the Court would hear testimony about the mental factors involved, mental mitigation, and also the substantial assistance that Mr. Coughlin has performed and intends to perform for the State." This Court was clear in its own discussions with the Defendant that the entire range of sentencing options was available, regardless of what designations were applied to the Defendant (e.g. habitual, violent habitual offender status). The Court stated: "The only representations that have been made is that any of the sentences imposed on the 99 case number as well as the violation of probation will be run concurrently and he'll receive credit for all time served. Is that your understanding and his as well?"
>
> Almost immediately after the Court's discussion of the "only representations made," the Defendant was sworn and a lengthy plea colloquy took place. During the colloquy, the Defendant was asked

whether anyone threatened, forced or promised him anything to cause him to enter his pleas. The Defendant answered in the negative to both questions. He was also asked specifically if he understood that two of his charges were punishable by up to life imprisonment, to which he answered affirmatively. There was discussion between the Defendant and the Court about the consequences of habitualization, or being designated a habitual violent offender, and the fact that the Court had some discretion about whether to so designate him. There was also discussion about the fact that the Court could impose life sentences on two of the counts regardless of any habitual designation.

The Court conversed with the Defendant about the possible effect of any mitigating evidence presented at sentencing. Specifically, the Defendant was informed that counsel could present mental health issues and his substantial assistance but that the entire range of options was available and could be considered: "Your sentence can be anywhere from 9.6 years on the three counts that we addressed, up to and including life in prison, mandatory life in prison as a violent career criminal. Do you understand that?" The Defendant responded, "Yes."

Perhaps of more significance than the Court's conversations with the Defendant are the comments the prosecutor made on the record at the end of the hearing. The crux of his statements was that the State Attorney's Office made no promises to the Defendant in exchange for his testimony and specifically stated that he believed that the Defendant ought to receive a life sentence. After the prosecutor spoke, the Court reiterated that there were no promises made:

> I have discussed with Mr. Coughlin and we have addressed that fact that [defense counsel] may present that (substantial assistance) on his behalf. If he does, the Court certainly will listen with an open mind and then make the appropriate determination. But he understands that the range of possible penalties is anywhere, as we discussed, from 9.6 years up to and including a mandatory life sentence as a violent career criminal. The understanding is that I will listen to all relevant facts at the sentencing hearing and then arrive at an appropriate disposition after hearing from all the interested parties on the 15th of February.

Based on the lengthy portions of the transcript included above, it is clear that any misadvice from counsel was corrected at the Defendant's change of plea hearing. The Court informed the Defendant what the maximum and minimum penalties were, stated there was no dispositional understanding and told the Defendant that he could possibly be sentenced to life in prison.

- 11 -

> The Defendant has therefore failed to demonstrate that his plea was involuntary. Leroux, at 238. See also Hoffman v. State, 700 So. 2d 765 (Fla. 3rd DCA 1997). The record in this case clearly demonstrates that the Court informed the Defendant that he could possibly be sentenced to life in prison. Even assuming, arguendo, that counsel did tell the Defendant he would get a ten-year sentence, this advice was corrected by the Court during the plea colloquy. This claim is therefore denied.

The record of the plea hearing supports the state court's findings of fact. (Respondent's Exhibit 34, vol. I at 151-70) Additionally, the state court's decision was not an unreasonable application of controlling Supreme Court authority. See e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant . . . [at the plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Grounds Four and Five:

Coughlin alleges that trial counsel rendered ineffective assistance by failing to both advise of the possibility of an involuntary intoxication defense (ground four) and assist him in withdrawing his plea after sentencing (ground five). After conducting an evidentiary hearing (Respondent's Exhibit 14), the state post-conviction court rejected these ineffective assistance claims as follows (Respondent's Exhibit 15 at 128-29) (citations to the record omitted):

> The Defendant's motion raised three claims of ineffective assistance of counsel . . . that counsel failed to advise him of the possibility of a voluntary intoxication defense and . . . that counsel failed to move to withdraw the Defendant's plea when requested to do so . . . . An evidentiary hearing was held on June 7, 2004 on [the voluntary intoxication and plea withdrawal] claims . . . . At that time, testimony was heard from the Defendant, his father, Thomas Coughlin, his mother, Catherine Coughlin and Richard Watts, trial counsel.

> With regard to [the voluntary intoxication] claim . . . , the court finds that trial counsel did not misadvise the Defendant with regard to the availability of a voluntary intoxication defense. It is inferentially obvious that the issue was discussed at length, as was detailed at length in the court's verbal ruling at the June 7 hearing. The Defendant's contention, in [the next] claim . . . , that counsel failed to move to withdraw his plea after being requested to do so, is similarly without merit. It is clear that trial counsel has no recollection of being asked to file such a motion. The court further finds that there is no legal basis for such a motion in this case and that absent a legal basis there is no requirement that counsel file such a motion. The Defendant's motion is denied.

The record contains further comments by the post-conviction court at the conclusion of the evidentiary hearing. Specifically, the court explained why trial counsel and Coughlin agreed to abandon a voluntary intoxication defense.

> You know, I note for the record, as [defense counsel] did, that voluntary intoxication is not a complete defense. It's only as to a specific intent crime, and then only as to that specific intent. Attempt murder first degree is a specific intent crime. There was no argument about any of the others. But it's only as to specific intent crimes that it's even a partial defense. So once the issue of a complete defense between intoxication and mental health impairment was gone, the focus — and this was discussed [defense counsel] indicated and, inferentially, it's obvious it was discussed at length — once that happened, then the idea was it might have knocked it down a degree of felony. But on a life felony, what would it have knocked it down to, a first or a first PBL, which still would have left him, as he pointed out, serious consequences as a possible sentence on all of the charges that he had. And the focus then between them was to look for something else sentencing wise, and that was the idea of substantial assistance. Even Mr. Coughlin bolstered by suggesting that he thought that he was going to get a specific sentence that would have gotten him in a lot better position than any possible voluntary intoxication defense. So there was no misadvice as to that. They were aware of it. It provided — it didn't provide the relief they were looking for. And when they couldn't use insanity as a full defense, they discarded the voluntary intoxication and went to the possibility of trying to affect the sentencing.

(Respondent's Exhibit 14 at 223-24) And the court explained why the plea withdrawal claim lacks merit.

- 13 -

> The point is, even if he asked him, so what. There has to be a legal basis for it. There is no guarantee or there is no requirement that the lawyer file a motion to withdraw on a case where there is no legal basis to do so. There was no legal basis in this particular circumstance. The idea that he was promised 10 years in prison by anybody is militated against by the clear words in the transcript. It was clear throughout the entire proceeding that the State wanted life as a sentence. It was clear that no promises were made as a part of the plea colloquy, and I went out of my way that morning, and through that plea colloquy, to make sure there were no promises and that he fully understood that he could get life.
>
> So any of this stuff that supposedly was going on -- wink, wink -- on the side that he says happened, even though there is nobody else that came in and testified that that was the case, all the objective evidence suggests otherwise. The State wanted life throughout the whole prosecution. He clearly understood there were no promises made by his entering the plea.
>
> I said at one point that I didn't want a plea in the case. This was a case that should and could have gotten set for trial and I didn't really want a plea in the case. And you all came to me and said that he understands; that he wants to testify in these other cases and see if he can get something for that testimony short of life. So he clearly understood. There was no guarantee of 10 years or no promise from anybody, as far as the 10 years was concerned.

(Respondent's Exhibit 14 at 224-26) The state court rejected both the voluntary intoxication claim and plea withdrawal claim based on the credibility of the witnesses who testified at the evidentiary hearing. The state court's credibility determinations bind this court. Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsel's] testimony over [petitioner's]."), cert. denied, 526 U.S. 1047 (1999) and Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995). See also 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a

- 14 -

State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Coughlin fails to meet his burden to overcome the state court's findings. Consequently, grounds four and five lack merit.

Ground Two:

Coughlin argues that sentences imposed for both attempted first degree murder and attempted felony murder violate the Fifth Amendment's Double Jeopardy Clause. Coughlin procedurally defaulted this claim by failing to assert it in the proper proceeding, specifically, Coughlin raised this claim in a state rule 3.800 motion to correct illegal sentence instead of a rule 3.850 motion to vacate. This distinction was the substance of the en banc decision in Coughlin v. State, 932 So.2d 1224, 1225-26 (Fla. 2d DCA 2006).

> We affirm the postconviction court's order denying all three of Coughlin's claims. However, we write to recede from *Ross v. State*, 760 So.2d 214 (Fla. 2d DCA 2000), insofar as it permits double jeopardy challenges to convictions under rule 3.800(a).
>
> Coughlin asserts that the trial court illegally sentenced him for the attempted first-degree murder and attempted felony murder convictions because both offenses involved a single act and victim. Coughlin affirmatively alleges that the information and the plea colloquy facially demonstrate that the offenses involved the same act and victim. *See* Fla. R. Crim. P. 3.800(a). As a result, Coughlin argues that the trial court violated double jeopardy principles by sentencing him for both offenses, and because the plea was not negotiated, there is nothing in the record indicating that he waived the double jeopardy challenge. *See Novaton v. State,* 634 So.2d 607, 608 (Fla. 1994).
>
> The postconviction court denied this claim because it attacks Coughlin's convictions, rather than his sentences, and is therefore not cognizable under rule 3.800(a). *See, e.g., Plowman v. State,* 586 So.2d 454, 456 (Fla. 2d DCA 1991); *Henry v. State,* 920 So.2d 1204, 1205 (Fla. 4th DCA 2006); *Salazar v. State,* 675 So.2d 654, 655 (Fla. 3d DCA 1996); *State v. Spella,* 567 So.2d 1051, 1051 (Fla. 5th DCA 1990); *Ferenc v. State,* 563 So.2d 707, 707 (Fla. 1st DCA 1990). Because this rule is well established in

- 15 -

> Florida, we would typically affirm the postconviction court's order per curiam. However, because *Ross* directly conflicts with the established rule, we write to recede from *Ross.*
>
> . . .
>
> Double jeopardy challenges to convictions are not cognizable under rule 3.800(a) for two reasons. First, a traditional double jeopardy challenge attacks both the conviction and, by default, the sentence, while rule 3.800(a) is limited to claims that a sentence itself is illegal, without regard to the underlying conviction. *See, e.g., Plowman,* 586 So.2d at 455; *Henry,* 920 So.2d at 1205; *Salazar,* 675 So.2d at 655; *Spella,* 567 So.2d at 1051; *Ferenc,* 563 So.2d at 707. Second, permitting defendants to attack their conviction and sentence under rule 3.800(a) would subsume Florida Rule of Criminal Procedure 3.850 into rule 3.800(a), thereby allowing defendants to circumvent rule 3.850's two-year time bar for attacking their convictions and sentences. *Cf. United States v. Little,* 392 F.3d 671, 678 (4th Cir. 2004) (finding that expanding Federal Rule of Criminal Procedure 35(a), after which rule 3.800(a) is modeled, would impermissibly infringe upon other collateral review rules).
>
> . . .
>
> However, Coughlin's double jeopardy challenge, although couched as an attack on his sentences, is inherently attacking his convictions because correcting the alleged double jeopardy violation would require vacating an underlying conviction. *See Kurtz v. State,* 564 So.2d 519, 521 (Fla. 2d DCA 1990) ("[I]t has been the general practice of the appellate courts to vacate both the adjudication of guilt and the sentence associated with a second offense which presents a double jeopardy problem."), *disapproved of on other grounds, Novaton v. State,* 634 So.2d 607 (Fla. 1994). As a result, such challenges are not cognizable under rule 3.800(a) and should be raised under rule 3.850. *Plowman,* 586 So.2d at 455; *Ferenc,* 563 So.2d at 707. Coughlin's motion could not be treated as a rule 3.850 motion because it is procedurally time barred.

Before a claim is procedurally barred from federal review, a state court must reject

reviewing the claim based on the procedural deficiency.

> Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."

- 16 -

Harris v. Reed, 489 U.S. 255, 262 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)).  Also, the court must state that it is enforcing the procedural rules.  "[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement' that its decision rests upon adequate and independent state grounds." Harris, 489 U.S. at 261 (quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983)). Consequently, the initial question is whether the state court issued a "plain statement" applying the independent and adequate state procedural bar.  The state's order both contains a "plain statement" invoking the state's procedural default rule and declines considering the claim based on the default rule.

> As a result, [double jeopardy] challenges are not cognizable under rule 3.800(a) and should be raised under rule 3.850. . . . Coughlin's motion could not be treated as a rule 3.850 motion because it is procedurally time barred.

Coughlin, 932 So.2d at 1226.  Both the circuit court's and the district court's plain statements applying the state's procedural rules distinguishes this case from Diaz v. Sec'y, Dep't of Corr., 313 Fed. Appx 262, 266 (11th Cir. 2009), in which a similar default was ignored because "the state courts have routinely considered such claims" in a rule 3.800 motion and "we are not convinced that the state court denied Diaz's motion on the procedural ground."  Additionally, ignoring the state's application of its procedural default rule in this case would permit Coughlin to circumvent both the state's two-year statute of

- 17 -

limitation for filing a rule 3.850 motion and the state's preclusion against filing second or successive rule 3.850 motions.[3]

As a general proposition, a federal court is precluded from addressing the merits of a procedurally defaulted ground unless the petitioner can show "cause and prejudice" or "manifest injustice." Coleman v. Thompson, 501 U.S. 72, 29-30 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986). "Cause" must ordinarily be something external to the defense. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of

---

[3] In denying the rule 3.800 motion, the state circuit court explained the impropriety of construing the motion as seeking rule 3.850 relief (Respondent's Exhibit 21 at 1-2) (citations to record omitted):

> Defendant contends that his sentences for attempted murder in the first degree and attempted felony murder committed against the same victim within the same criminal episode violates the protection against double jeopardy. A double jeopardy claim is an argument challenging the conviction, not the sentence. As such, this claim must be raised pursuant to Fla. R. Crim. P. 3.850. McCraney v. State, 830 So. 2d 262, 262 (Fla. 5th DCA 2002); see also Smith v. State, 886 So. 2d 336 (Fla. 5th DCA 2004).
>
> Further, this claim is not cognizable pursuant to Fla. R. Crim. P. 3.800(a) since consideration of the merits would require an evidentiary hearing. It is generally recognized that convictions for both attempted murder in the first degree and attempted felony murder arising from the same criminal act violate double jeopardy protections. See Mitchell v. State, 830 So. 2d 944 (Fla. 5th DCA 2002); see also Gordon v. State, 780 So. 2d 17, 25 (Fla. 2001). However, dual convictions are permitted if an act distinguishes the two offenses. Tucker v. State, 857 So. 2d 978, 979 (Fla. 4th DCA 2003). A review of the court file indicates that the record does not contain any transcripts or depositions for this Court to perform a complete and thorough review of the factual basis of the charges. As the court records do not demonstrate an entitlement to relief from the face of the record and extra judicial fact-finding would be necessary to determine the merits of the double jeopardy claim, the merits of the claim cannot be determined from the face of the record. See Smith, *supra;* Tidwell v. State, 790 So. 2d 1184 (Fla. 2d DCA 2001).
>
> Despite the fact that Defendant included an oath to *his* Motion, this Court cannot entertain *his* motion pursuant to Fla. R. Crim. P. 3.850 because such a motion is both successive and untimely. The record indicates that Defendant filed a previous 3.850 motion that was addressed and denied on its merits. Since Defendant could and should have included this instant claim in that 3.850 motion, any consideration of this successive Motion under the Rule would constitute an abuse of process. As to the timeliness requirement, Defendant had two years from the filing of the mandate on December 23, 2002 in his direct appeal (consolidated appeal #2001-3223/2002-1343) to file as to this claim.

- 18 -

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis original).

To meet the fundamental miscarriage of justice exception, Coughlin must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause). Because Coughlin shows neither cause and prejudice nor manifest injustice to overcome the procedural default, the review of ground two is procedurally barred.

Ground Six:

Coughlin alleges that his life sentence is illegal for the attempted felony murder because the information failed to sufficiently charge a crime under state law. This claim is procedurally defaulted because Coughlin failed to assert this argument in the trial court. "In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court." Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla. 1987). See Occhicone v. State, 570 So.2d 902, 906 (Fla. 1990). When Coughlin asserted this claim on direct appeal the respondent specifically argued that Coughlin's failure to properly preserve this claim precludes appellate review. Contrary to the "plain statement" requirement established in Michigan v. Long, a state court's silent affirmance is presumably based on the state procedural rule. See Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."); Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1316-17 (11th Cir. 2006) ("The Supreme Court has provided clear guidance on how to construe a summary or unexplained state court decision.  In Ylst v. Nunnemaker, the Court held that when a state appellate court affirms a lower court's ruling without articulating its reasons for doing so, we should apply 'the following presumption:  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'  501 U.S. 797, 803 . . . ."), cert. denied 440 U.S. 922 (2007); Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (A state appellate "court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts.").  Because Coughlin shows neither cause and prejudice nor manifest injustice to overcome the procedural default, the review of ground six is procedurally barred.

Accordingly, Coughlin's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Coughlin and close this case.[4]

ORDERED in Tampa, Florida, on July 29, 2010.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[4] Coughlin's motion (Doc. 27) inquiring about the status of this case is denied as moot.